UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANVIR SINGH CHEEMA (A-216-401-983, <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, Warden of the California City Detention Facility, et al., <br><br> Respondents. | No. 1:26-cv-01238-DJC-CSK <br><br><br> ORDER and FINDINGS AND RECOMMENDATIONS |

Petitioner Ranvir Singh Cheema (A-216-401-983), a native and citizen of India who is proceeding without counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner entered the United States on March 7, 2018, was initially detained by Customs and Border Protection inside the United States, underwent a credible fear interview with an asylum officer, and was found to be credible and to have a credible fear of persecution.  On May 23, 2018, petitioner was released on bond.  On September 17, 2025, petitioner was arrested and re-detained by U.S. Customs Enforcement ("ICE") when he reported to ICE and has been in continuous detention since this date.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

and ordering respondents to provide petitioner a bond hearing within seven days.

## I.  FACTUAL BACKGROUND

Petitioner is a native and citizen of India.  (ECF No. 10-3 at 1 (Notice to Appear).)  On or around March 7, 2018, petitioner entered the United States and was detained.  (Id.)  On March 28, 2018, an asylum officer conducted a credible fear interview of petitioner, finding that petitioner was credible and had a credible fear of persecution.  (ECF No. 10-2 at 1-5 (Record of Determination/Credible Fear Worksheet).) On March 29, 2018, DHS issued petitioner a Notice to Appear, placing petitioner in standard removal proceedings pursuant to Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a).[2]  (ECF No. 10-3 at 1.)  The Notice to Appear charged petitioner under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen "present in the United States without being admitted or paroled" and not having proper documents in violation of INA § 212(a)(7)(A)(i)(1), 8 U.S.C. § 1182(a)(7)(A)(i)(1).  (Id.)  The Notice to Appear also stated it was issued "after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture."  (Id.)  The date of appearance noted "To Be Determined."  (Id.)  On May 18, 2018, an immigration judge issued petitioner a $21,000 immigration bond.  (ECF No. 10-5 at 3.)  On May 23, 2018, petitioner was released from immigration custody on a $21,000 bond.  (ECF Nos. 10 at 2; 10-5 at 3.)

On August 14, 2024, petitioner was arrested and booked into Sutter County Jail for forcible rape, kidnapping, sexual penetration with force, and domestic battery.  (ECF No. 10-4 at 7.)  The case is pending and no formal charges have been brought.  (Id. at 9.)

On September 3, 2025, DHS issued a "Notice to Obligor to Deliver Alien" (ICE Form 1-340) demanding petitioner to present himself to ICE.  (ECF No. 10-5 at 2.)  On September 17, 2025, petitioner reported to ICE and was arrested and detained.  (Id.)  Petitioner asserts he has complied with any and all requests and orders from ICE and has not committed or been convicted of any crimes.  (ECF No. 1 at 5.)  As described above, respondents dispute petitioner's contention

---

[2]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

regarding his criminal history.  (See ECF No. 10 at 2; ECF No. 10-4 at 7.)  Petitioner has been detained since September 17, 2025.  (ECF Nos. 1 at 5.)

## II.    PROCEDURAL BACKGROUND

On February 12, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.) On February 25, 2026, respondents timely filed an answer to the petition and a motion to dismiss moving to dismiss and strike all respondents except for petitioner's immediate custodian.  (ECF Nos. 9, 10.)  Petitioner did not file a traverse or an opposition to the motion to dismiss.  See Docket.  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner raises a single claim arguing his detention violates the Fifth Amendment due process clause.[3]  (ECF No. 1 at 2, 16.)

---

[3]  Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his re-detention, and not limited to a claim challenging his detention as prolonged.

3

Respondents argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) during his removal proceedings and is not entitled to a bond hearing on whether petitioner is a flight risk of danger to the community.  (ECF No. 10 at 1, 3-8.) Respondents also argue that petitioner has raised a substantive due process claim, not a procedural due process claim.  (Id. at 4-8.)  Respondents do not argue that petitioner is an applicant for admission.  (See id.)

   A.   **Applicability of 8 U.S.C. § 1225(b)(1)(B)(ii)**

The first issue the Court must address is whether petitioner, who has lived in the United States since he was released on bond in 2018, is subject to discretionary release under § 1226(a), or whether petitioner is subject to mandatory detention under § 1225(b)(1)(B)(ii), as respondents argue.

An applicant for admission is normally ordered removed "without further hearing or review" pursuant to an expedited removal process.  8 U.S.C. § 1225(b)(1)(A)(i).  But if the noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that noncitizen is referred for an asylum interview.  8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview and determination, the noncitizen shall be detained.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after the interview that the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).

8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Unlike § 1225(b)(1)(B)(ii), noncitizens who fall under § 1226(a) are not subject to mandatory detention.  Pending a removal decision, the Attorney General may continue to detain an arrested noncitizen, release them on bond, or release them on conditional parole, unless they fall within certain exceptions involving criminal offenses and terrorist activities. See 8 U.S.C. § 1226(a) (1)-(2), (c). Under § 1226(a), the

4

government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202. Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing." Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).

The Court concludes that § 1226(a) applies to petitioner. After petitioner was found to have a credible fear of persecution, petitioner was issued a Notice to Appear on March 29, 2018 placing him in standard removal proceedings under 8 U.S.C. § 1229a, rather than keeping him in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1). (See ECF Nos. 10-2 at 1-5; 10-3 at 1.) On May 18, 2018, an immigration judge issued petitioner a $21,000 immigration bond and on May 23, 2018, petitioner was released from immigration custody on bond. (ECF Nos. 10 at 2; 10-5 at 3.) Petitioner remained out of immigration custody on release for over seven years from May 2018 until September 2025 when he was re-detained. Accordingly, this Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations. See Rubio Gomez v. Bondi, 2026 WL 788805, at *2 (D. Nev. Mar. 20, 2026) ("[W]here a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' " the former applies. […] Section "1225(b)(1) only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings and the credible fear interview and review process," which ceased in petitioner's case nearly two years ago when he received a credible fear determination and was released from ICE custody upon being placed in standard removal proceedings."). Respondents' argument that § 1225(b)(1) applies to the September 2025 re-detention thus fails. See id. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)). If, at this

5

hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release. Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). As such, petitioner should have been provided a bond hearing before his re-detention.

### B. Due Process Claim (Claim One)

Petitioner argues that his detention violates his right to due process under the Fifth Amendment. Respondents argue that petitioner does not have a due process right to a bond hearing because § 1225(b)(1)(B)(ii) does not provide for a bond hearing. Respondents' asserted compliance with § 1225(b)(1)(B)(ii) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring). Respondents also argue that petitioner has raised a substantive due process claim, not a procedural due process claim. (Id. at 4-8.) The Court finds that petitioner has raised a procedural due process claim as the petition challenges his detention without adequate procedure—a hearing to evaluate danger or flight risk. (See ECF No. 1 at 2, 5.) The fact that petitioner, who is proceeding without counsel, incorrectly refers to § 1226(c) does not change this, especially given that respondent does not contend that petitioner is detained pursuant to § 1226(c). (See ECF No. 1 at 5; ECF No. 10.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's procedural due process claim "in two steps: the first asks

6

whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty."  Id. at 481-84.

Here, petitioner's initial detention and subsequent release on bond in May 2018 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over seven years.  Such time allowed petitioner to form

"enduring attachments of normal life." Morrissey, 408 U.S. at 482.  This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over seven years, petitioner was free from custody before his re-detention. (ECF Nos. 1 at 5; 10 at 2; 10-5 at 3.)  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore

8

the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Here, petitioner has been detained since September 17, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community. It is not this Court's role to determine whether petitioner is a danger or flight risk, and a neutral arbiter may very well determine that petitioner is a danger given the seriousness of what the government presents as pending criminal charges.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on bond by an immigration judge, and petitioner lived in the country for over seven years on release. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was re-detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the

nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is entitled to relief on his due process claim, and should be provided a bond hearing before a neutral arbiter where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify his continued detention.

## V.   PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel.  (ECF No. 3.)  There currently exists no absolute right to appointment of counsel in habeas proceedings.  See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996).  Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require."  See Rule 8(c), Fed. R. Governing § 2254 Cases.  Because the Court recommends granting the petition, the Court does not find the interests of justice require appointment of counsel.  Petitioner's motion to appoint counsel is therefore denied without prejudice.

## VI.   RESPONDENTS' MOTION TO DISMISS

Respondents move to strike and dismiss all named officials besides petitioner's immediate custodian, the warden of the detention facility.  (ECF No. 9.)  "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held ...."  Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).  The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed

10

pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024).  The Court recommends granting the motion to dismiss and dismissing all named respondents (Pamela Bondi, Kristi Noem, Todd Lyons, and Sergio Albarran) other than the Warden of the detention facility (Christopher Chestnut).

**VII.    CONCLUSION**

In summary, the Court recommends that the petition for writ of habeas corpus be granted on petitioner's due process claim.

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is DENIED WITHOUT PREJUDICE.

Further, IT IS HEREBY RECOMMENDED that:

1. Respondents' motion to dismiss (ECF No. 9) be GRANTED and respondents Pamela Bondi, Kristi Noem, Todd Lyons, and Sergio Albarran be dismissed.  Respondent Christopher Chestnut is the remaining respondent.

2. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

3. Respondents be ordered to provide petitioner Ranvir Singh Cheema (A-216-401-983) with a bond hearing before a neutral arbiter within **seven (7) days** of the adoption of these findings and recommendations where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify his continued detention.

4. Given petitioner's pro se status, respondents be directed to file, within **seven days** after the bond hearing is held, a status report providing an update as to petitioner's status.

5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

11

Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 30, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

4, chee1238.26